## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| BARTLEY M. MULLEN, JR., individually and on behalf of all others similarly situated, | Case No.    2:19-cv-809 |
| Plaintiff, | |
| v. | |
| G6 HOSPITALITY LLC, G6 HOSPITALITY FRANCHISING LLC, MOTEL 6 OPERATING, L.P., G6 HOSPITALITY PROPERTY LLC, G6 HOSPITALITY REAL ESTATE LLC, and BRE/EVERBRIGHT M6 LLC, | |
| Defendants. | |

## NATIONWIDE CLASS ACTION COMPLAINT

Plaintiff, Bartley M. Mullen, Jr. ("Plaintiff"), individually and on behalf of all others similarly situated, brings this class action against G6 Hospitality LLC, G6 Hospitality Franchising LLC, Motel 6 Operating, L.P., G6 Hospitality Property LLC, G6 Hospitality Real Estate LLC, and BRE/Everbright M6 LLC (collectively, "Defendants"), alleging violations of Title III of the Americans with Disabilities Act, 42 U.S.C. § 12101 *et seq.* and its implementing regulations (the "ADA"), for declaratory and injunctive relief, attorneys' fees, expenses and costs.

## INTRODUCTION

1.      Defendants own, operate, and franchise a network of motels and extended-stay hotels across the United States under the trade names of "Motel 6" and "Studio 6" (referred to as "motels" throughout).

2.      Since Motel 6 was first founded in the 1960s, the motels have been consistently represented to the public as welcome to all, where they'll "leave the light on", and that wherever

guests may be traveling, they can expect "a consistent brand experience in a clean, comfortable room at an affordable rate".[1]

3.      Indeed, prominently stated on Defendants' home webpage is a credo of inclusion: "We believe everyone should have a right to travel, so we give people an affordable, welcoming place to rest wherever their journey takes them." Https://g6hospitality.com/ (last accessed July 8, 2019).

4.      Unfortunately, Defendants do not offer the same welcoming, consistent experience and quality to guests who have disabilities. Defendants fail to offer individuals with disabilities a range of guest room options and amenities that are equivalent to the options and amenities offered to individuals without disabilities, including, but not limited to, the types of guest rooms, the number of beds, and the types of amenities offered.

5.      The practical effect of Defendants' failure to offer the same types of guest rooms and amenities to individuals with disabilities as those that are offered to individuals without disabilities is exclusion and a net reduction of budget-friendly transient lodging options for a group of Americans disproportionately affected by low wages and underemployment: "[t]he average annual earned income for an American with disability is $26,487 – 38 percent less than for someone without a disability, according to a 2018 report by the American Institutes for Research. The Labor Department reports that only about 19 percent of people with a disability are employed, compared with nearly 66 percent of people without a disability."[2]

---

[1] Rob Palleschi, CEO of G6 Hospitality LLC, *G6 Hospitality Passes Franchise Milestone, Introduces New Design* (Jan. 28, 2019) *available at* https://www.hotelbusiness.com/g6-hospitality-passes-franchise-milestone-intros-new-design/

[2] Joshua Brockman, *At Banks and Fund Firms, Access is Too Often Denied, Blind and Deaf Investors Say*, The New York Times (July 5, 2019), *available at* https://www.nytimes.com/2019/07/05/business/retirement-planning-disabled-deaf-blind.html

6.      In failing to provide accessible rooms with the same options and amenities offered to guests without disabilities, Defendants have engaged in illegal discrimination, excluded and deterred individuals with disabilities from patronizing Defendants' motels, and denied individuals with disabilities full and equal access to the goods, services, facilities, privileges, advantages, and accommodations that Defendants offer to the public.

7.      Defendants' discrimination violated and continues to violate Title III of the ADA, and unless Defendants are required to change their policies and practices so that Defendants' goods, services, facilities, privileges, advantages, and accommodations are accessible to individuals with disabilities, Plaintiff and the proposed class will continue to be denied full and equal access to Defendants' motels and will be deterred from using Defendants' motels.

8.      In accordance with 42 U.S.C. § 12188(a)(2), Plaintiff seeks a permanent injunction requiring that:

a)  Defendants change their policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities; and,

b)  Plaintiff's representatives shall monitor Defendants' motels to ensure that the injunctive relief ordered pursuant to this Complaint has been implemented and will remain in place.

9.      Plaintiff's claims for permanent injunctive relief are asserted as class claims pursuant to Fed. R. Civ. P. 23(b)(2). Rule 23(b)(2) was specifically intended to be utilized in civil rights cases where the plaintiff seeks injunctive relief for his or her own benefit and the benefit of a class of similarly situated individuals. To that end, the note to the 1996 amendment to Rule 23 states:

Subdivision(b)(2). This subdivision is intended to reach situations where a party has taken action or refused to take action with respect to a class, and final relief of an injunctive nature or a corresponding declaratory nature, settling the legality of the behavior with respect to the class as a whole, is appropriate…. Illustrative are

various actions in the civil rights field where a party is charged with discriminating unlawfully against a class, usually one whose members are incapable of specific enumeration.

## THE ADA AND ACCESSIBLE TRANSIENT LODGING

10.     The ADA was signed into law by President George H.W. Bush nearly thirty years ago with the intent to "provide a clear and comprehensive national mandate for the elimination of discrimination against individuals with disabilities." 42 U.S.C. § 12101(b)(1).

11.     When the ADA's implementing regulations were revised in 2010, a regulatory impact analysis found that "[s]ome of the most frequently cited qualitative benefits of increased access are the increase in one's personal sense of dignity that arises from increased access and the decrease in possibly humiliating incidents due to accessibility barriers. Struggling [to use a non-accessible facility] negatively affect[s] a person's sense of independence and can lead to humiliating accidents, derisive comments, or embarrassment. These humiliations, together with feelings of being stigmatized as different or inferior from being relegated to use other, less comfortable or pleasant elements of a facility . . . all have a negative impact on persons with disabilities." *Final Regulatory Impact Analysis of the Final Revised Regulations Implementing Titles II and III of the ADA, Including Revised ADA Standards for Accessible Design*, U.S. Dep't Just. (July 3, 2010).[3]

12.     Title III of the ADA requires that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

---

[3] Available at http://www.ada.gov/regs2010/RIA_2010regs/DOJ%20ADA%20Final%20RIA.pdf

13.     Discrimination on the basis of disability can occur, generally, through a denial of the opportunity to participate in or benefit from goods, services, facilities, privileges, advantages, or accommodations (42 U.S.C. § 12182(b)(1)(A)(i)); from affording goods, services, facilities, privileges, advantages, or accommodations that are not equal to those afforded to other individuals (42 U.S.C. § 12182(b)(1)(A)(ii)); from providing goods, services, facilities, privileges, advantages, or accommodations that are separate from those provided to other individuals (42 U.S.C. § 12182(b)(1)(A)(iii)); or from utilizing methods of administration that have the effect of discriminating on the basis of a disability (42 U.S.C. § 12182(b)(1)(D)).

14.     The ADA and its implementing regulations also define prohibited discrimination to include the following: (i) the failure to remove architectural barriers when such removal is readily achievable for places of public accommodation that existed prior to January 26, 1992 (28 C.F.R. § 36.304(a) and 42 U.S.C. § 12182(b)(2)(A)(iv)); (ii) the failure to design and construct places of public accommodation for first occupancy after January 26, 1993, that are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.401 and 42 U.S.C. § 12183(a)(1)); and (iii) for alterations to public accommodations made after January 26, 1992, the failure to make alterations so that the altered portions of the public accommodation are readily accessible to and usable by individuals with disabilities (28 C.F.R. § 36.402 and 42 U.S.C. § 12183(a)(2)).

15.     The Department of Justice, pursuant to 42 U.S.C. § 12186(b), has promulgated the ADA Accessibility Guidelines ("ADAAG") in implementing Title III of the ADA. There are two active ADAAGs that set forth the technical requirements that a public accommodation must meet in order to be "readily accessible": the 1991 ADAAG Standards, 28 C.F.R. § pt. 36, App. D ("1991 Standards"), and the 2010 ADAAG Standards, 36 C.F.R. § pt. 1191, App. D ("2010 Standards").

16.    Both the 1991 Standards and the 2010 Standards require places of transient lodging, such as motels, to provide a certain number of accessible sleeping rooms and suites, determined on a sliding scale based on the total number of guest rooms offered. 1991 Standards §§ 9.1.2-3; 2010 Standards §§ 224.2-4.

17.    The number of accessible guest rooms required is as follows:

| Total Number of Guest Rooms Provided | Minimum Number of Required Accessible Rooms Without Roll-in Showers | Minimum Number of Required Accessible Rooms with Roll-in Showers | Minimum Number of Required Rooms with Communication Features (2010 Standards) | Minimum Number of Required Rooms with Communication Features (1991 Standards) |
|---|---|---|---|---|
| 1 to 25 | 1 | 0 | 2[4] | 1 |
| 26 to 50 | 2 | 0 | 4 | 2 |
| 51 to 75 | 3 | 1 | 7 | 3 |
| 76 to 100 | 4 | 1 | 9 | 4 |
| 101 to 150 | 5 | 2 | 12 | 5 |
| 151 to 200 | 6 | 2 | 14 | 6 |
| 201 to 300 | 7 | 3 | 17 | 7 |
| 301 to 400 | 8 | 4 | 20 | 8 |
| 401 to 500 | 9 | 4 | 22 | 9 |
| 501 to 1000 | 2 percent of total | 1 percent of total | 5 percent of total | 2 percent of total |
| 1001 and over | 20, plus 1 for each 100, or fraction thereof, over 1000 | 10, plus 1 for each 100, or fraction thereof, over 1000 | 50, plus 3 for each 100 over 1000 | 20, plus 1 for each 100 over 1000 |

[4] The 2010 Standards uses a range of Total Number of Guest Rooms Provided of "2 to 25" for communication feature requirements, versus the 1991 Standards' "1 to 25".

*Id.*

18.     In addition to requiring the provision of accessible rooms, the ADA requires hotels to offer accessible guest rooms with an equivalent range of options and amenities that are offered in guest rooms available to individuals without disabilities.

19.     The 1991 Standards require accessible rooms to "be dispersed among the various classes of sleeping accommodations available to patrons of the place of transient lodging. Factors to be considered include room size, cost, amenities provided, and the number of beds provided." 1991 Standards § 9.1.4(1).

20.     The 2010 Standards are substantially similar, and require that accessible rooms "shall be dispersed among the various classes of guest rooms, and shall provide choices of types of guest rooms, number of beds, and other amenities comparable to the choices provided to other guests. Where the minimum number of guest rooms required to comply with 806 is not sufficient to allow for complete dispersion, guest rooms shall be dispersed in the following priority: guest room type, number of beds, and amenities. At least one guest room required to provide mobility features with 806.2 shall also provide communication features complying with 806.3. Not more than 10 percent of guest rooms required to provide mobility features complying with 806.2 shall be used to satisfy the minimum number of guest rooms required to provide communication features complying with 806.3." 2010 Standards § 224.5.

21.     The Advisory to Section 224.5 states that "[f]actors to be considered in providing an equivalent range of options may include, but are not limited to, room size, bed size, cost, view, bathroom fixtures such as hot tubs and spas, smoking and nonsmoking, and the number of rooms provided."

22.     The Department of Justice explained in its Guidance on the 2010 Standards that the "dispersion requirement is intended to effectuate Congress' directive that a percentage of each class of hotel rooms is to be fully accessible to persons with disabilities. *See* H.R. Rep. No. 101-485 (II) at 391. Accordingly, the promise of the ADA in this instance is that persons with disabilities will have an equal opportunity to benefit from the various options available to hotel guests without disabilities, from single occupancy guest rooms with limited features (and accompanying limited price tags) to luxury suites with lavish features and choices."

23.     The ADA requires reasonable modifications in policies, practices, or procedures when necessary to afford goods, services, facilities, privileges, advantages, or accommodations to individuals with disabilities, unless the public accommodation can demonstrate that making such modifications would fundamentally alter their nature. 42 U.S.C. § 12182(b)(2)(A)(ii).

24.     The remedies and procedures set forth at 42 U.S.C. § 2000a-3(a) are provided to any person who is being subjected to discrimination on the basis of disability or who has reasonable grounds for believing that such person is about to be subjected to discrimination in violation of 42 U.S.C. § 12183. 42 U.S.C. 12188(a)(1).

## JURISDICTION AND VENUE

25.     This Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331 and 42 U.S.C. § 12188.

26.     Plaintiff's claims asserted herein arose in this judicial district, and Defendants do substantial business in this judicial district.

27.     Venue in this judicial district is proper under 28 U.S.C. § 1391(b)(2) in that this is the judicial district in which a substantial part of the events and/or omissions at issue occurred.

## PARTIES

28.    Plaintiff Bartley M. Mullen, Jr. is, and at all times relevant for purposes of this action was, a resident of Beaver, Pennsylvania.

29.    Plaintiff is a person with double, above-the-knee leg amputations, who uses a wheelchair for mobility. As a result of this mobility disability, Plaintiff is substantially limited in one or more major life activities, particularly with ambulation.  Plaintiff is therefore a member of a protected class under the ADA, 42 U.S.C. § 12102(2), and the regulations implementing the ADA set forth at 28 C.F.R. §§ 36.101 et seq.

30.    Plaintiff is both a tester in this litigation and a consumer who wishes to access Defendant's goods and services.  *See, e.g., Nanni v. Aberdeen Marketplace, Inc.*, 878 F.3d 447, 457 (4th Cir. 2017); *Civil Rights Educ. & Enf't Ctr. v. Hosp. Props. Tr.,* 867 F.3d 1093, 1102 (9th Cir. 2017); *Colo. Cross Disability Coal. v. Abercrombie & Fitch Co.*, 765 F.3d 1205, 1211-12 (10th Cir. 2014); *Houston v. Marod Supermarkets, Inc.*, 733 F.3d 1323, 1334 (11th Cir. 2013); *see also Havens Realty Corp. v. Coleman*, 455 U.S. 363, 372-74 (1982).

31.    Defendant G6 Hospitality LLC is a Delaware limited liability company, and is headquartered at 4001 International Parkway, Carrollton, Texas 75007.

32.    Defendant G6 Hospitality Franchising LLC is a Delaware limited liability company, and is headquartered at 4001 International Parkway, Carrollton, Texas 75007.

33.    Defendant G6 Hospitality LLC owns, controls, and manages the operations of Defendant G6 Hospitality Franchising LLC.

34.    Defendant G6 Hospitality Franchising LLC offers transient lodging franchises in the United States under the service marks "Motel 6®" and "Studio 6®".

35.     Defendant Motel 6 Operating, L.P. is a Delaware limited partnership, and is headquartered at 4001 International Parkway, Carrollton, Texas 75007.

36.     Defendant G6 Hospitality Property LLC is a Delaware limited liability company, and is headquartered at 4001 International Parkway, Carrollton, Texas 75007.

37.     Defendant G6 Hospitality Real Estate LLC is a Delaware limited liability company, and is headquartered at 4001 International Parkway, Carrollton, Texas 75007.

38.     Defendants Motel 6 Operating, L.P., G6 Hospitality Property LLC, and G6 Hospitality Real Estate LLC, on information and belief, own and/or operate company-owned Motel 6 and Studio 6 locations.

39.     Defendant BRE/Everbright M6 LLC is a Delaware limited liability company, and is headquartered at 345 Park Avenue, New York, New York 10154.

40.     Defendant BRE/Everbright M6 LLC is the ultimate parent company of Defendants G6 Hospitality Franchising LLC, G6 Hospitality LLC, Motel 6 Operating, L.P., G6 Hospitality Property LLC, and G6 Hospitality Real Estate LLC.

## FACTUAL ALLEGATIONS

**I.      Defendants Deny Individuals with Disabilities the Full and Equal Enjoyment of Defendant's Goods, Services, Facilities, Privileges, Advantages, and Accommodations.**

41.     Plaintiff travels from time-to-time in and around the western Pennsylvania region, and while traveling, he prefers to stay at a motel. Plaintiff requires a mobility-accessible guest room to accommodate his needs as an individual with a mobility disability.

42.     In the spring of 2019, Plaintiff attempted to book a mobility-accessible room at Defendants' motel located at 211 Beecham Drive, Pittsburgh, Pennsylvania 15205 (the "Subject Motel").

43.     The Subject Motel offers guest room options that include rooms with: (1) two full-size beds: (2) two full-size beds with a micro-fridge: (3) one queen-size bed; and (4) one queen-size bed with a micro-fridge. There are approximately 122 guest rooms available at the Subject Motel.

44.     Plaintiff wished to stay in an accessible guest room with a queen-size bed with a micro-fridge, and was prepared to pay a premium for such options and amenities.

45.     When Plaintiff attempted to book a room with a queen-size bed with a micro-fridge at the Subject Motel, however, Plaintiff discovered through Defendants' online reservation service, and separately by directly calling the Subject Hotel, that Defendants only offer *one* accessible guest room at the Subject Hotel: a guest room with one full-size bed.

46.     Frustrated and humiliated that he could not reserve the type of guest room he was seeking and that his only option for an accessible guest room was so limited, Plaintiff sought accommodations elsewhere.

47.     Plaintiff's experience is not isolated. Nearly all of Defendants' locations do not offer accessible guest rooms that are dispersed among the various classes of guest rooms offered to guests who do not need an accessible room, and do not provide choices of the type of guest rooms, number of beds, and other amenities comparable to the options provided to guests who do not need an accessible room.

48.     An investigation performed on behalf of Plaintiff confirmed that, in addition to the Subject Property, Defendants' other motels fail to offer a range of equivalent accessible guest room options and amenities comparable to those offered to other guests. These motels include, but are not limited to, the following locations:

a)  221 E Byers Ave, New Stanton, PA 15672;

11

b)  1010 Dholu Rd, Barkeyville, PA 16038;

c)  24 United Drive, Clarion, PA 16214;

d)  7455 Schultz Rd, Erie, PA 16509;

e)  381 Cumberland Park, Mechanicsburg, PA 17055;

f)  200 Commerce Drive, New Cumberland, PA 17070;

g)  7965 Jonestown Road, Harrisburg, PA 17112;

h)  1095 Wayne Avenue, Chambersburg, PA 17201;

i)  323 Arsenal Rd, York, PA 17402;

j)  125 Arsenal Rd, York, PA 17404;

k)  2959 Lincoln Hwy E, Gordonville, PA 17529;

l)  2815 Old Montoursville, Montoursville, PA 17754;

m)  6305 Columbia Blvd, Bloomsburg, PA 17815;

n)  701 Altamont Bouleva, Frackville, PA 17931;

o)  681 Blue Barn Road, Allentown, PA 18104;

p)  1064 Berwick Hazleto, Drums, PA 18222;

q)  884 Schechter Drive, Wilkes-Barre, PA 18702;

r)  265 E Street Rd, Warminster, PA 18974;

s)  43 Industrial Hwy, Essington, PA 19029;

t)  6401 Bristol Pike, Levittown, PA 19057;

u)  815 W Dekalb Pike, King Of Prussia, PA 19406;

v)  78 Robinson St, Pottstown, PA 19464;

w)  35 Roadside Drive, Shartlesville, PA 19554; and,

x)  11580 Roosevelt Blvd, Philadelphia, PA 19116.

49.     For most of Defendants' motels, Defendants typically offer a variety of types of guest room options, including but not limited to, rooms with one full-size bed, two full-size beds, one queen-size bed, two queen-beds, one king-size bed, and suites with varying amenities.

50.     However Defendants offer minimal accessible guest room options, typically only offering the most basic options that are not comparable to the same choices of guest rooms and amenities provided to guests who do not need an accessible guest room.

51.     For example, on information and belief, all of Defendants' Pennsylvania locations offer at least two types of guest room options, such as rooms with different types of beds, for guests who do not need accessible rooms, and 20 locations, or approximately 80% of all locations, offer three or more types of guest room options.

52.     With respect to accessible guest rooms, however, Defendants offer dramatically less options. For example, on information and belief, out of all of Defendants' Pennsylvania locations, 17 locations, or approximately 68%, offer only one type of accessible guest room; 7 locations, or approximately 28%, offer two types of accessible guest rooms; no locations offer three or more types of accessible guest rooms; and 1 location does not offer any accessible guest rooms.

53.     With respect to amenities, Defendants typically offer guest rooms that include but are not limited to features such as in-room refrigerators, jacuzzis, sofa-beds, and smoking-friendly rooms.

54.     On information and belief, none of Defendants' Pennsylvania locations offer any of these types of amenities for accessible guest rooms.

II.      **Defendants Exercise System-Wide Control over Individual Motel Operations.**

55.      Defendants are engaged in the ownership, management, franchising, operation, and development of motels throughout the United States, including, upon information and belief, approximately 1,386 Motel 6 and Studio 6 locations in the United States, of which there are, upon information and belief, 25 in Pennsylvania.

56.      Defendants employ centralized policies, practices, and procedures with regard to the design, construction, alteration, maintenance, and operation of their motels.

57.      Although many of Defendants' motels are franchised to individual motel operators, Defendants exercise extensive system-wide control of individual motel operations.

58.      At the organizational level, Defendant G6 Hospitality LLC owns, controls, and manages the operations of Defendant G6 Hospitality Franchising LLC, and also directly provides certain services to franchisees including but not limited to e-procurement services, billing, marketing, reservations, renovations, and customer services.[5]

59.      According to Defendants' latest franchise disclosure documents:

   a) Franchisees are required to strictly follow "System Standards": "In order to protect our reputation and goodwill and to maintain high standards of operation under the System, you must operate your Motel in strict conformance with our Standards, including the methods and specifications we prescribe from time to time in the Manuals or otherwise in writing. The Standards may relate to any aspect of the operation of your Motel." FDD at 66.

---

[5] G6 Hospitality Franchising LLC, "*Motel 6" Franchise Disclosure Document* ("FDD"), at 2 (March 2019).

b)  Defendants make unilateral changes to the Standards from time-to-time and at their discretion. *Id.*

c)  Defendants impose these Standards and other various requirements on franchisees "in order to ensure that System Motels are uniform and of similar quality, and to maintain the identity, integrity and reputation of the System...." *Id.*

d)  Before a franchisee may begin a new construction of a motel or conversion of an existing property into a motel, a proposed site evaluation must be sent to Defendants for review and approval. *Id.* at 73.

e)  Defendants rely on and provide to franchisees prototype construction plans for new constructions. *Id.* at 74.

f)  Defendants review franchisees' construction and/or renovation plans for compliance with their Standards before permitting a franchisee to operate a location: Defendants will "[i]nspect your Motel and, if in our sole judgment you have renovated or constructed the Motel in strict compliance with the approved Renovation or Construction Plans and according to our Standards, authorize you to open as a Motel 6 Motel." *Id.* at 75.

g)  Defendants will "[c]onduct inspections or evaluations of [franchisee] facilities and services to evaluate adherence to the Standards and Manuals." *Id.* at 76.

60.   In the past, Defendants have implemented system-wide changes to their network of motels under a variety of circumstances, for example, to fix a system-wide problem, including but not limited to the following:

15

    a)  In March 2008, a system-wide renovation program was implemented to update all Motel 6 locations' appearances, features, and amenities;[6]

    b)  In 2015, a system-wide renovation program referred to as the "Phoenix Project" was implemented to renovate all Motel 6 guest rooms with newer amenities and updated appearances.[7]

61.    Despite Defendants' demanding standards for uniformity and quality for all of their motels, and the fact that Defendants oversee and inspect individual motels on a regular basis and require those motels to implement changes necessary to fix existing problems, Defendants continue to operate their motels in violation of the ADA.

**III.    Defendants' Discrimination has Injured Plaintiff and Individuals with Disabilities.**

62.    As a result of Defendants' non-compliance with the ADA, Plaintiff's right to full, equal and non-discriminatory access to Defendants' goods, services, facilities, privileges, advantages, and accommodations has been denied.

63.    Defendants' failure to provide accessible guest rooms dispersed among the various classes of guest rooms comparable to the choices provided to other guests, infringes Plaintiff's right to travel free of discrimination.

64.    Plaintiff has suffered, and continues to suffer, frustration, loss of independence, and humiliation because of Defendants' discriminatory practices, policies, and procedures. By continuing to operate their motels with discriminatory conditions, Defendants contribute to

---

[6] "Motel 6 tries an environmentally friendly re-design" (Oct. 3, 2012), *available at* https://www.budgettravel.com/article/motel-6-tries-an-environmentally-friendly-re-design_10614 (last accessed July 8, 2019).

[7] "Motel 6 changes it up with renovated rooms that make budget look hip" (Mar. 28, 2016), *available at* https://www.latimes.com/travel/california/la-trb-motel-6-makeover-20160324-story.html (last accessed July 8, 2019).

Plaintiff's sense of segregation, and deprive Plaintiff of the full and equal enjoyment of the goods, services, facilities, privileges, advantages and accommodations available to other members of the public.

65.     Plaintiff will be deterred from returning to Defendants' motels so long as Defendants' motels remain non-compliant, and so long as Defendants continue to employ the same policies and practices that have led, and in the future will lead, to inaccessibility, discriminatory conditions, and segregating individuals with disabilities.

66.     As an individual with a mobility disability who is dependent upon a wheelchair, Plaintiff is directly interested in whether public accommodations, like Defendants' motels, are fully accessible by individuals with mobility-related disabilities.

67.     Without injunctive relief, Plaintiff will continue to be unable to fully and equally access Defendants' motels in violation of Plaintiff's rights under the ADA.

68.     As set forth herein, Defendants' policies, practices, and procedures are inadequate in that Defendants' motels are operated in violation of the accessibility requirements of Title III of the ADA.

69.     Absent a change in Defendants' corporate policies and practices, discrimination and unequal treatment of individuals with disabilities is likely to reoccur in Defendants' motels.

70.     Accordingly, Plaintiff seeks an injunction to modify the policies and practices that have created or allowed, and will create or allow, the limited, unequal and discriminatory provision of Defendants' goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities.

## CLASS ALLEGATIONS

71.    Plaintiff brings this action under Rule 23(a) and (b)(2) of the Federal Rules of Civil

Procedure individually and on behalf of the following classes:

    a.  All persons with qualified disabilities who have attempted, or will
        attempt, to patronize any of Defendants' motels in the United States
        and have, or will have, experienced discrimination because of
        Defendants' failure to provide an equivalent range of guest room
        choices available to other guests.

    b.  All persons with qualified disabilities who have attempted, or will
        attempt, to patronize any of Defendants' motels in Pennsylvania and
        have, or will have, experienced discrimination because of
        Defendants' failure to provide an equivalent range of guest room
        choices available to other guests.

72.    <u>Numerosity</u>: The class described above is so numerous that joinder of all individual

members in one action would be impracticable. The disposition of the individual claims of the

respective class members through this class action will benefit both the parties and this Court, and

will facilitate judicial economy.

73.    <u>Typicality</u>: Plaintiff's claims are typical of the claims of the members of the class.

The claims of Plaintiff and members of the class are based on the same legal theories and arise

from the same unlawful conduct.

74.    <u>Common Questions of Fact and Law</u>: There is a well-defined community of interest

and common questions of fact and law affecting members of the class in that they all have been

and/or are being denied their civil rights to full and equal access to, and use and enjoyment of,

Defendants' facilities and/or services due to Defendants' failure to make its facilities fully

accessible and independently usable as above described. The questions of law and fact that are

common to the class include, but are not limited to:

    a.  Whether Defendants own, operate, and/or control places of public accommodation
        subject to Title III of the ADA and its implementing regulations;

18

b.   Whether Defendants provide accessible guest rooms that are dispersed among the various classes of guest rooms offered by Defendants;

c.   Whether Defendants provide choices of types of accessible guest rooms and amenities equivalent to the choices offered to guests who do not require an accessible room;

d.   Whether Defendants' policies and practices discriminate against Plaintiff and putative class members in violation of Title III of the ADA and its implementing regulations.

75.    <u>Adequacy of Representation</u>: Plaintiff is an adequate representative of the class because his interests do not conflict with the interests of the members of the class. Plaintiff will fairly, adequately, and vigorously represent and protect the interests of the members of the class, and he has no interests antagonistic to the members of the class. Plaintiff has retained counsel who are competent and experienced in the prosecution of class action litigation, generally, and who possess specific expertise in the context of class litigation under the ADA.

76.    Class certification is appropriate pursuant to Fed. R. Civ. P. 23(b)(2) because Defendants have acted or refused to act on grounds generally applicable to the class, making appropriate both declaratory and injunctive relief with respect to Plaintiff and the class as a whole.

## **CAUSE OF ACTION**

### **Violations of 42 U.S.C. §§ 12181, *et seq.***

77.    Plaintiff incorporates by reference the allegations contained in all prior paragraphs as if set forth fully herein.

78.    Title III of the ADA applies to Defendants because Defendants own, lease (or lease to), or operate places of public accommodation.

79.    Defendants have failed, and continue to fail, to provide individuals with disabilities with full and equal enjoyment of Defendants' motels. 42 U.S.C. § 12182(a).

80.     Pursuant to 42 U.S.C. § 12182(a), Defendants have discriminated against Plaintiff and the class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations of Defendant's motels by failing to offer individuals with disabilities a range of guest room options equivalent to those offered to other customers.

81.     Defendants have further failed to provide facilities that are readily accessible to, and independently usable by, individuals with mobility disabilities by failing to provide the requisite number of accessible rooms required under the ADAAG. 42 U.S.C. §§ 12183(a)(1) – (2).

82.     Defendants' failure to make reasonable modifications in policies, practices, and procedures to afford the goods, services, facilities, privileges, advantages, and accommodations offered by Defendants to individuals with disabilities is discriminatory and in violation of the ADA, 42 U.S.C. § 12182(b)(2)(A)(ii).

83.     Defendants' conduct is ongoing and continuous, and Plaintiff has been harmed by Defendants' conduct.

84.     Unless Defendants are restrained from continuing their ongoing and continuous course of conduct, Defendants will continue to violate the ADA and will continue to inflict injury upon Plaintiff and the class.

85.     Given that Defendants have discriminated against Plaintiff and the class on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, and accommodations offered by Defendants to individuals without disabilities, Plaintiff invokes his statutory rights to declaratory and injunctive relief, as well as costs and attorneys' fees.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff, individually and on behalf of the members of the class, prays

for:

a.  A declaratory judgment that Defendants are in violation of the specific requirements of Title III of the ADA, and the relevant implementing regulations of the ADA, in that Defendants have denied Plaintiff and the class full and equal access to Defendants' motels by failing to provide accessible guest rooms dispersed among the various classes of guest rooms, with equivalent options and amenities offered to other guests;

b.  A permanent injunction pursuant to 42 U.S.C. § 12188(a)(2) and 28 C.F.R. § 36.501(b) that directs: (i) Defendants to change their policies and practices necessary to afford all offered goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities in full compliance with the requirements set forth in the ADA, and its implementing regulations, so that Defendants' motels are fully accessible to, and independently usable by, individuals who use wheelchairs, scooters or other mobility devices; and (ii) Plaintiff shall monitor Defendants' motels to ensure that the injunctive relief ordered above remains in place.

c.  An Order certifying the classes proposed by Plaintiff, naming Plaintiff as class representative, and appointing his counsel as class counsel;

d.  Payment of costs of suit;

e.  Payment of reasonable attorneys' fees, pursuant to 42 U.S.C. § 12205 and 28 C.F.R. § 36.505; and,

f.  The provision of whatever other relief the Court deems just, equitable, and appropriate.

Dated: July 8, 2019                                    Respectfully submitted,

                                                       */s/ R. Bruce Carlson*

                                                       R. Bruce Carlson
                                                       Kelly K. Iverson
                                                       Bryan A. Fox
                                                       **CARLSON LYNCH, LLP**
                                                       1133 Penn Avenue, 5th Floor
                                                       Pittsburgh PA, 15222
                                                       (412) 322-9243 (Tel.)
                                                       bcarlson@carlsonlynch.com
                                                       kiverson@carlsonlynch.com
                                                       bfox@carlsonlynch.com

                                                       *Attorneys for Plaintiff*